## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROGER D. MAGEE**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 14-1986**

**WALTER P. REED, ET AL.**                         **SECTION "B"(1)**

### ORDER AND REASONS

Before the Court is a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim (upon which relief can be granted), or in the alternative 12(c) Motion for Judgment on the Pleadings, or in the alternative Fed. R. Civ. P. 46 Motion for Summary Judgment, by Defendant, Walter Reed,("Defendant"), former District Attorney for Washington Parish, State of Louisiana, sued in both his individual and official capacity.[1] A memorandum in opposition to the pending motions, which was set for hearing on July 8, 2015, has been filed by Plaintiff, Roger Magee ("Plaintiff").[2] Subsequently, the Defendant filed a reply memorandum in support of the motions.[3] Accordingly, and for the reasons enumerated below,

**IT IS ORDERED** that the Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED** as to all claims asserted against him.

---

[1] Rec. Doc. No. 29.
[2] Rec. Doc. No. 30.
[3] Rec. Doc. No. 31-2.

## I.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff alleges that, commencing on or about 2010 through April or May 2012, he provided information to the Federal Bureau of Investigation ("FBI"), concerning Jerry Wayne Cox ("Cox") regarding actions taken by Cox with respect to property damage insurance claims and with regard to  his relationship with Defendant.[4] Plaintiff alleges that Cox and Defendant had a business relationship that involved a personal injury "joint venture" that helped support expensive lifestyles led by both men.[5] Plaintiff alleges that a reason for Defendant and Cox's concern about Plaintiff's speaking with the FBI was the fact that it could lead to discovery of underreporting of income and tax fraud related to the personal injury settlement proceeds.[6] During the first weekend in August 2012, Plaintiff alleges that Cox informed him that he was aware Plaintiff was communicating with the FBI and threatened that "if and when [Plaintiff] crossed state lines [into Louisiana], Reed [would] handle [him]."[7]

On or about October 25, 2012, an Order for Body Attachment concerning unpaid child support was filed in the matter entitled

---

[4] Rec. Doc. No. 23 at 6.
[5] Rec. Doc. No. 23 at 7.
[6] Rec. Doc. No. 23 at 7.
[7] Rec. Doc. No. 23 at 8.

*Crystal Magee v. Roger G. Magee*.[8] Due to Plaintiff's filing for Social Security Disability benefits, an Order to Recall Body Attachment ("Recall Order") was signed by the  to the Office of Child Support Enforcement in Conway Arkansas, which in turn sent the payments to Louisiana where the child is domiciled.[9] Plaintiff alleges that he had since been making support payments. Additionally, Plaintiff alleges that the issuance of the above Order for Body Attachment was orchestrated by the Defendant, through his connections with the District Attorney's Office and Cox.[10]

On March 28, 2014, Plaintiff traveled from Arkansas to his aunt's home in Louisiana to visit with his family.[11] Within minutes of his arrival, Plaintiff alleges that at least five (5) units of police officers converged upon the residence, descending upon the house and rear patio.[12] Plaintiff alleges that some or all of the officers had their weapons drawn (removed from their holsters or "leather").[13] Plaintiff alleges that he then stated that, if this had to do with child support payments, he was "in compliance" with the state of Arkansas and could show the officers court papers (the Recall Order) that

---

[8] *Crystal Magee v. Roger D. Magee,* (Circuit Court of Faulkner County Arkansas, Fourth Division), No. DR 2010-1066; Rec. Doc. No. 23 at 9.
[9] Rec. Doc. No. 23 at 9.
[10] Rec. Doc. No. 23 at 10.
[11] Rec. Doc. No. 23 at 11.
[12] Rec. Doc. No. 23 at 12.
[13] Rec. Doc. No. 23 at 12.

relieved Plaintiff of his obligations due to his disabilities.[14]
As he proceeded toward the doors to retrieve the Recall Order,
Plaintiff alleges he was "rushed by the officers," and tased in
his back, which caused him to crash headfirst onto the concrete
floor.[15] Plaintiff was then handcuffed and allegedly tased
again.[16]

      As a result of the above, Plaintiff alleges that he
suffered severe traumatic brain injury, and while incarcerated
experienced a number of symptoms, and injured his left foot,
left knee, and left shoulder.[17] Plaintiff did not know the full
extent of his brain injury at the time he filed his complaint
and was still undergoing testing.[18]

      After Plaintiff was booked, he was incarcerated at the
Washington Parish Jail where he alleges black mold covered the
walls and ceilings and he was forced to sleep on the floor due
to overcrowding, which he further alleges is a policy of the
Washington Parish Jail.[19] Plaintiff also alleges that he was
denied medical treatment for his various injuries, and that,
although he made it clear that he required daily insulin

---

[14] Rec. Doc. No. 23 at 12.
[15] Rec. Doc. No. 23 at 13.
[16] Rec. Doc. No. 23 at 13.
[17] Rec. Doc. No. 23 at 13.
[18] Rec. Doc. No. 23 at 13.
[19] Rec. Doc. No. 23 at 15- 16.

injections due to chronic injuries, he was denied insulin for three to four days at a time.[20]

During his ninety-seven (97) days of incarceration, Plaintiff alleges he requested bail through his family and criminal defense counsel, and those requests were refused allegedly due to a "DA hold."[21] On July 7, 2014, Plaintiff was released from Washington Parish Jail on the condition that he plead guilty to a violation of La. R.S. 14:75 (Failure to Pay Child Support) and La. R.S. 14:108 (Resisting an Officer).[22] In exchange for his plea agreement and agreement to pay restitution, Plaintiff was given probation for a period of five (5) years. Plaintiff has since filed a notice of appeal.[23]

Plaintiff has asserted causes of action against Defendant, in his individual and official capacity as former District Attorney for Washington Parish. The allegations against Defendant are as follows: under 42 U.S.C. § 1983, Plaintiff brings an action for false arrest; excessive force; procedural due process; false imprisonment; and free speech retaliation.[24]

---

[20] Rec. Doc. No. 23 at 16.
[21] Rec. Doc. No. 23 at 18.
[22] Rec. Doc. No. 23 at 18.
[23] Rec. Doc. No. 23 at 18.
[24] Rec. Doc. No. 23, § 27(a)-(d), 34(a), and 40-42; Counts IV and VI are not applicable to Defendant. In addition, state law claims for battery and excessive force are not applicable to Defendant, as they refer to actions of the officers who arrested the Plaintiff.

Additionally under 42 U.S.C. § 1983, Plaintiff alleges a *Monell* municipal violation.[25]

Plaintiff filed the Amended Complaint in response to Defendant's Motion for More Definite Statement. The Motion for More Definite Statement was dismissed without prejudice by the Magistrate Judge.[26] Defendant then filed the instant 12(b)(6) Motion to Dismiss or alternatively, Motion for Judgment on the Pleadings or Motion for Summary Judgment.[27]

**II.   <u>LAW AND ANALYSIS</u>**

A. *Fed. R. Civ. P. 12(b)(6) Motion to Dismiss*

i.   Standard for Dismissal

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, to survive a motion to dismiss, the plaintiff's factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is plausible on its face when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

---

[25] Rec. Doc. No. 23 at 29.
[26] Rec. Doc. No. 22.
[27] Rec. Doc. No. 29.

Simply reciting the elements of a cause of action, supported only by conclusory statements, does not suffice. *Ashcroft*, 129 S.Ct. at 1949, (*citing Bell Atlantic Corp. V. Twombly*, 127 S.Ct. 1955 (2007)). In order to determine whether a plaintiff has pled factual allegations that state a claim that is facially plausible, the Court may not evaluate the probability of plaintiff's success, but must construe the complaint "liberally" and accept all of the allegations in the complaint as true. *See Twombly*, 127 S.Ct. at 1965 (factual allegations, taken as true, must be sufficient to raise a right to relief beyond the speculative level, even if doubtful in fact); *see also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

    ii.  *Whether the Complaint States Claims upon Which Relief can be Granted*

a. <u>Heck v. Humphrey</u>

Relying on *Heck v. Humphrey*, the Defendant contends that Plaintiff's guilty pleas to state charges (resisting an officer and failure to pay child support) preclude each of his § 1983 claims.[28] In *Heck v. Humphrey*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction

---

[28] Rec. Doc. No. 31-2 at 3.

7

or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-87 (1994). *Heck* prohibits a plaintiff from using a § 1983 suit to challenge the validity of his conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated, also known as the "favorable termination requirement". *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). Consequently, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *Id*. at 498 (*quoting McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006)); *see also Connors v. Graves*, 538 F.3d 373, 376-77 (5th Cir. 2008). This is because "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir.1987) (alterations and citation omitted).

*Count I: False Arrest*

In Count I Plaintiff alleges there was no probable cause to arrest him, and Defendant erroneously gave instructions to the Washington Parish's Sherriff's Office to deploy a large number of officers and to use force against the Plaintiff.[29]   Although Plaintiff pled guilty to the charges of resisting arrest and for failure to pay child support, he alleges this does not bar his claim under *Heck*.[30]

To prevail on a false arrest claim, Plaintiff would have to show there was no probable cause to arrest him. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *see also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 644 (5th Cir. 2004)("To ultimately prevail on his § 1983 false arrest/false imprisonment claim, [plaintiff] must show that [the officer] did not have probable cause to arrest him."). Generally, where a plaintiff was arrested for crimes of which he was ultimately convicted, *Heck* bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest. *Walter v. Horseshoe Entm't*, 483 F.Appx 884, 887-88 (5th Cir. 2012). Plaintiff's argument against his arrest is that at the time of his arrest, March 28, 2014, Louisiana lacked

---

[29] FAC 27(b)(c).
[30] FAC 23.

jurisdiction over his child support obligation.[31] However, Plaintiff also concedes that at the time of his guilty plea, July 7, 2014, Louisiana had re-gained jurisdiction over his child support obligation and thus, his conviction will not be invalid for that reason.[32]

However, pursuant to La. R.S. 13:3201(A)(6), Louisiana's Long-Arm Statute, "A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent as to a cause of action arising from any one of the following activities performed by the nonresident. . . (6) Non-support of a child. . . domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state." Therefore, as Defendant asserts, regardless of Plaintiff's residency at the time of the arrest, because his child to whom he owed support was domiciled in Louisiana, Louisiana courts had personal jurisdiction over a cause of action arising out of his failure to pay child support. Thus, Plaintiff's false arrest claim is barred under *Heck* due to his subsequent guilty plea for failure to pay child support, the very charge for which he was arrested.

---

[31] Rec. Doc. No. 30 at 16.
[32] Rec. Doc. No. 30 at 17.

*Count II: Excessive Force*

In Count II Plaintiff alleges that during his arrest, an excessive use of force was deployed against him after he was handcuffed.[33] Plaintiff's guilty plea to resisting arrest does not bar his excessive force claim under *Heck.* In *Daigre v. City of Waveland, Miss.*, the court held the plaintiff's excessive-force claims were barred by *Heck* because the complaint contained several statements that contradicted her previous admission of guilt to resisting arrest. 549 F. App'x 283, 286 (5th Cir. 2013). Therefore, because the plaintiff broadly claimed she was an innocent participant in the entire arrest encounter, her excessive force claim was inconsistent with her previous guilty plea. *Id.* at 286-87. By contrast, in *Bush v. Strain*, the court found that a plaintiff's excessive-force claims were not barred because the plaintiff's complaint referred to conduct that occurred after she was restrained, and thus was not inconsistent with her guilty plea to resisting arrest. 513 F.3d 492, 499 (5th Cir. 2008).

Comparing the complaint in this case to the complaints in *Daigre* and *Bush*, Plaintiff's excessive force claim is not subject to dismissal under *Heck*. First, as a result of Plaintiff's guilty plea, there were no factual findings made on the issue. Whether a plaintiff's § 1983 claim is barred under

---

[33] Rec. Doc. No. 30 at 7.

*Heck* is an "analytical and fact-intensive determination." *Id.* at 497. Moreover, Plaintiff's allegation that excessive force was used after he was handcuffed does not invalidate his guilty plea to resisting arrest prior to his being restrained, and therefore his excessive force claim is not *Heck*-barred.

*Count III: False Imprisonment*

The Defendant also argues that *Heck* bars the Plaintiff's procedural due process/false imprisonment claim because he has not satisfied *Heck's* "favorable termination requirement." Like the above false arrest claim, to recover damages for alleged unconstitutional imprisonment, a § 1983 plaintiff must prove that the officer lacked probable cause to arrest and detain him. *Haggerty*, 391 F.3d at 644. A guilty plea establishes guilt as a matter of law, and a plaintiff cannot change the validity of his guilty plea, sentence, or judgment in a tort proceeding. *Heck*, 512 U.S. 486-87; *see also Thomas v. Louisiana, Dep't of Soc. Servs.*, 406 F. App'x 890, 898 (5th Cir. 2010). Due to the fact that success on his false imprisonment claim would involve a determination that would invalidate his plea of guilty to the charges for which he was confined, Plaintiff's claim for false imprisonment is also barred by *Heck*. *See e.g. Daigre*, 549 F. App'x 283; *DeLeon v. City of Corpus Christy*, 488 F.3d 649 (5th Cir. 2007).

*Count III: Free Speech Retaliation*

Finally, Defendant contends that *Heck* also bars the Plaintiff's § 1983 free speech retaliation claim because like Plaintiff's excessive force and false imprisonment claims, it is in fundamental conflict with his guilty plea.[34] Here, Plaintiff contends that the Defendant orchestrated his arrest in retaliation for the Plaintiff's providing information regarding the Defendant and Cox to the FBI.[35] For Plaintiff to prevail on his First Amendment retaliation claim, he would need to negate an element of the offense of which he was convicted, namely the lack of probable cause required for his lawful arrest. *Hartman v. Moore*, 547 U.S. 250, 252 (2006)(holding that want of probable cause to support the underlying criminal charge must be alleged and proven for a First Amendment violation to be actionable); *see also Jenkins v. Town of Vardaman, Mississipi*, 899 F. Supp. 2d 526, 535 (N.D. Miss. 2012). Any subsequent guilty plea on the charges for which a plaintiff was arrested, like the Plaintiff's guilty plea to failure to pay child support, invalidates a First Amendment Retaliation claim. Here, because a lack of probable cause for Plaintiff's arrest is a requisite for his success on his First Amendment retaliation claim, but the want of such probable cause would invalidate his guilty plea to the charges

---

[34] Rec. Doc. No. 31-2 at 3-4.
[35] Rec. Doc. No. 23 at 6-7.

of failure to pay child support and resisting arrest,
Plaintiff's First Amendment Retaliation claim is also barred by
*Heck*.

### b. § 1983 Causality Requirement

#### Count I: Excessive Force

While Plaintiff's excessive force claim is not *Heck*-barred,
it does not survive § 1983's causality requirement. To state a
claim under § 1983 a plaintiff must (1) allege a violation of a
right secured by the Constitution or laws of the United States
and (2) demonstrate that the alleged deprivation was committed
by a person acting under color of state law. *Victoria W. v.
Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). A plaintiff "must
identify defendants who were either personally involved in the
constitutional violation or whose acts are causally connected to
the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d
577, 583 (5th Cir. 1995). Because Plaintiff's excessive force
claim deals with actions of the officers who effectuated the
Plaintiff's arrest and Defendant was not present at the time of
the arrest, Defendant is not "causally connected" to Plaintiff's
excessive force claim.[36] Thus, the claim is not one upon which
relief can be granted, making dismissal proper.

---

[36] Rec. Doc. 29-2 at 2.

*Count II: Procedural Due Process*

Additionally, as to Plaintiff's assertion that his procedural due process rights were violated because he was not allowed to post bail, Defendant submits that there was a state court hearing for the purposes of setting bond on March 31, 2015.[37] At the hearing, a bond amount was set on one charge, and the second charge was based on the body attachment (for alleged failure to pay child support) and no bond was set.[38] However, the Defendant contends that these bond issues were determined by the Commissioner, not the Defendant and in fact, no one from the District Attorney's office was even present at the hearing.[39] As stated above, under § 1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Victoria W.*, 369 F.3d 482. Furthermore, also as stated above, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods,* 51 F.3d at 583. Because neither Defendant nor any employees of the District Attorney's officer were involved in the Plaintiff's allegedly not being permitted to post bail,

---

[37] Rec. Doc. No. 29-3
[38] Rec. Doc. No. 29-3.
[39] Rec. Doc. No. 29-2 at 5; Rec. Doc. No. 29-3.

Defendant is not "causally connected", and Plaintiff's due process claim does not survive under § 1983.

### Count III: Monell Municipal Violations

Additionally, Defendant alleges that the Plaintiff failed to state a cause of action upon which relief may be granted under *Monell*.[40] In his final claim, Plaintiff alleges, that Defendant, in his official capacity has engaged in policies, procedures and customs which violated the rights of the citizens, including the right to be free from unlawful arrest and imprisonment.[41] These policies include (a) failing to adequately train Assistant District Attorneys and Staff in proper procedures consistent with the Fourth and Fourteenth Amendments; (b) condoning and participating in the fabrication of evidence and withholding of exculpatory evidence by Assistant District Attorneys; (c) sanctioning, condoning, and approving the policy of arresting members of the public without probable cause or reasonable suspicion; and (d) sanctioning, condoning, and approving a department-wide culture of prosecution at all costs.[42] Plaintiff contends that it is the direct and proximate result of these policies that he was wrongfully arrested and imprisoned.[43]

---

[40] Rec. Doc. No. 29-2 at 9.
[41] Rec. Doc. No. 23 at 27.
[42] Rec. Doc. No. 23 at 29.
[43] Rec. Doc. No. 23 at 29.

District attorney's offices have been held to resemble local government entities for purposes of "official capacity" suits, and therefore these suits are recognized as suits against the municipality. *See Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999); *see also Connick v. Thompson*, 131 S. Ct. 1350 (2011).

In a *Monell* claim, there is no *respondeat superior* liability. *Monell v. Dep't of Soc. Servs of New York*, 436 U.S. 658, 693-94 (1978). Instead, in order to succeed on such a claim, a plaintiff must establish (1) an official policy or custom of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *See McGreggory v. City of Jackson*, 335 Fed. Appx. 446, 448 (5th Cir. 2009); *see also Rivera v. Houston Indep. Sch. Dist*, 349 F.3d 244, 247-49 (5th Cir. 2003).

Moreover, to establish liability against a government official in his "official capacity" under § 1983, a plaintiff must show that a policy or custom of which the official is an agent must have played a part in the violation of federal law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiff must prove that "action pursuant to official municipal policy" caused his injury. *Connick*, 131 S. Ct. at 1359. Official municipal policies include the decisions of a government's lawmakers, the acts of

its policymaking officials, and "practices so persistent and widespread as to practically have the force of law." *Id.; see also Monell*, 436 U.S. at 690-91. A plaintiff may not infer a policy because harm resulted from an interaction with a governmental entity; however, if a policy exists and causes a constitutional violation, a single application of that policy can result in liability. *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Oklahoma City v. Tuttle*, 471 U.S. at 820-24 (1985) (holding that jury instructions that permitted jurors to infer the existence of official policies from a single unconstitutional act were improper).

Here, Plaintiff's cause of action is based upon the allegation that there was no probable cause to arrest him, and he was only arrested in retaliation for his protected speech, but the official policies and procedures identified by the Plaintiff do not relate to any of his claims. That is, Plaintiff alleges that the assistant district attorneys were improperly trained, but does not submit that any assistant district attorneys or staff participated in any of the claims brought herein.[44] Additionally, Plaintiff alleges unlawful policies relating to fabrication of evidence and withholding of evidence, but does not allege actual fabrication or any withholding of evidence herein. Finally, Plaintiff alleges the policy of

---

[44] Rec. Doc. No. 23 at 29.

arresting citizens without probable cause and an "all costs" policy of prosecution; yet Plaintiff pled guilty to the charges against him, and thus destroyed the allegation that the officers lacked probable cause to arrest him or prosecute him. Therefore, even when viewed in the light most favorable to the Plaintiff, Plaintiff's *Monell* claim is meritless because the Constitutional violations alleged do not flow from the policies asserted, and the claims asserted against the Defendant in his official capacity should be dismissed.

### c. Qualified Immunity

The Defendant has raised the qualified immunity defense to all of Plaintiff's § 1983 claims brought against him in his individual capacity. The United States Supreme Court has established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (citation omitted). Because qualified immunity constitutes immunity from a lawsuit, rather than a mere defense

to liability, the defense is intended to give public officials immunity from disruptive and burdensome pretrial matters such as discovery. *Id.* Thus, adjudication of qualified immunity claims should occur "at the earliest possible stage in litigation." *Id.* (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

The qualified immunity defense presents a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct. The Court must determine whether a public official's conduct deprived a § 1983 plaintiff of a "clearly established constitutional or statutory right." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). A constitutional right "is clearly established" if, 'in the light of pre-existing law the unlawfulness [is] apparent.'" *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir. 1994) (en banc).

*Count I Excessive Force*

Plaintiff's only remaining claim is that of excessive force. Here, Plaintiff alleges that the Defendant ordered his arrest and instructed that excessive force be used against him.[45] In his motion for dismissal or in the alternative, summary judgment, the Defendant invoked the defense of qualified

---

[45] Rec. Doc. No. 30 at 21; Rec. Doc. No. 23 at 12-13.

immunity. Thus, the Plaintiff bore the burden of establishing that the Defendant violated a constitutional right, and that the constitutional right was clearly established at the time of its violation. Here, the Plaintiff has not submitted any case law to support the contention that the right not to have a government official order excessive force used against him was an established constitutional right at the time of the alleged misconduct.[46] Because Plaintiff has not borne his burden in rebutting Defendant's assertion that the qualified immunity defense is applicable, Plaintiff's excessive force claim is also dismissed.

## III. CONCLUSION

Accordingly, and for the reasons enumerated above, Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State A Claim is granted as to all claims asserted against him by Plaintiff.


New Orleans, Louisiana, this 19th day of August, 2015.


UNITED STATES DISTRICT JUDGE

---

[46] Rec. Doc. No. 30 at 12, 21.