UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROGER D. MAGEE** | * | CIVIL ACTION NO.: 14-01986 |
| | * | |
| **VERSUS** | * | JUDGE (SECTION "B") |
| | * | IVAN L.R. LEMELLE |
| **WALTER P. REED, ET AL** | * | |
| | * | MAGISTRATE (1): |
| | * | JANET VAN MEERVELD |
| * * * * * * * * * * * * * * * * * | | |

### MEMORANDUM IN SUPPORT OF
### DEFENDANT'S MOTION TO COMPEL

Plaintiff Roger Dale Magee ("Magee") has asserted numerous causes of action against defendant Walter P. Reed in his former official capacity as District Attorney for the 22nd Judicial District of Louisiana (the "D.A.") arising out of Magee's March 28, 2014, arrest and subsequent incarceration at the Washington Parish Jail on charges of resisting arrest and failure to pay a significant amount of child support.  All of Magee's claims against the D.A. were dismissed by this Honorable Court by order dated August 19, 2015.[1]  The U.S. Fifth Circuit reversed and remanded certain of Magee's claims by judgment dated January 8, 2019; namely: (1) false imprisonment; (2) free speech retaliation; and (3) procedural due process violations.[2]

Much discovery has been completed since the matter was re-opened, but discovery has been hampered by Magee's continuing disregard for this Honorable Court, officers thereof and the law.  Specifically, Magee's deposition testimony makes clear he did not review any discovery requests, he did not look for documents responsive to requests made by counsel despite the fact that his wife during her deposition that they had the documents, and he has produced nothing further to date thus evidencing his continuing disregard for all involved.

---

[1]  Rec. Doc. 37.
[2]  *Magee v. Reed*, 17-30353 (5th Cir. 1/8/19); 912 F.3d 820.

**I.      INTRODUCTION AND BACKGROUND**

Magee was arrested on March 28, 2014, on an arrest warrant issued on September 13, 2011, for violations of La. R.S. 14:75(C) (known as the Deadbeat Parent's Punishment Act) and his bail was equal to his unpaid child support arrearages through the issuance date totaling $19,693.73.  While incarcerated, Magee was arrested again on April 1, 2014, on a second arrest warrant issued that day for further violations of La. R.S. 14:75(C) to update the arrearages due through the date of arrest and bail equal to that amount, which totaled $39,197.56.

Magee pled guilty to violations of La. R.S. 14:75(C)(5) on July 7, 2014, and stipulated that he owed more than $39,197.56 in arrearages in violation of same.  Despite being represented by counsel at all times following his 2014 arrest, Magee failed to seek reduction or a modification of his bail in order to secure his release from jail, which only the District Court has discretion in fixing, reducing and/or modifying.

Despite the D.A. having no discretion regarding the policies of the Washington Parish Sheriff's Office (the "WPSO") governing incarceration of inmates or the authority to fix, reduce and/or modify a criminal defendant's bail, and despite the D.A. having no communications with Jerry Wayne Cox ("Cox") regarding Magee's 2014 arrest, his incarceration resulting therefrom or his release from jail thereafter, Magee filed this suit alleging that his release was unnecessarily prevented due to placement of a "D.A. Hold" which all of the parties agree does not exist.

All of Magee's claims against the D.A. were dismissed by this Honorable Court by order dated August 19, 2015.[3]  The U.S. Fifth Circuit reversed and remanded certain of Magee's claims by judgment dated January 8, 2019; namely: (1) false imprisonment; (2) free speech retaliation; and (3) procedural due process violations.[4]  This suit was reopened as a result.

---

[3]     Rec. Doc. 37.
[4]     *Magee v. Reed*, 17-30353 (5th Cir. 1/8/19); 912 F.3d 820.

On June 6, 2019, the D.A. served Magee with the D.A.'s first set of requests for admissions, interrogatories and requests for production of documents (the "Requests").[5] On July 15, 2019, Magee responded to the Requests (the "Responses").[6]

On July 17, 2019, the undersigned scheduled a discovery conference pursuant to Fed. R. Civ. P. 37(a)(1) to discuss the woeful inadequacy of the responses provided, which was held on July 24, 2019, and during which Magee's counsel agreed to produce supplemental written responses.[7] On August 5, 2019, Magee provided his first supplemental and amended responses to the Requests (the "Supplemental Responses").[8]

On August 16, 2019, Magee's wife, Jennifer Magee, was deposed, during which she testified she had numerous of the documents requested from Magee in her possession in the house that they share.[9] Magee's counsel agreed to produce the documents, including all documents relating to Magee's arrest/incarceration located in a "tote" bag,[10] the Order of Body Attachment from the Arkansas Office of Child Support Enforcement[11] and copies of engagement letters (if any) with Magee's numerous attorneys.[12] These documents have not been produced.

On October 3, 2019, Magee offered testimony contradicting his Responses and Supplemental Responses – making clear that he not only failed to review his written responses and instead only skimmed them,[13] but that his responses to the D.A.'s requests for admissions were untrue[14] and his search efforts for documents requested by the D.A. was hapless at best.[15]

---

[5] **Exhibit "1"** – D.A.'s Discovery Requests (6/6/2019).
[6] **Exhibit "2"** – Magee's initial responses to the D.A.'s Requests (7/15/2019).
[7] **Exhibit "3"** – Email setting Fed. R. Civ. P. 37 Conference by phone.
[8] **Exhibit "4"** – Magee's supplemental responses to the D.A.'s Requests (7/15/2019).
[9] **Exhibit "5"** – Excerpts from Jennifer Magee Depo Tr. (8/5/2019).
[10] *Id.* at pp. 24:15-27:11.
[11] *Id.* at pp. 123:16-124:10.
[12] *Id.* at pp. 143:24-146:2.
[13] **Exhibit "6"** – Excerpts from Magee's Depo Tr., Vol. II (10/03/2019).
[14] *Id.* at pp. 46:2-47:14 (Magee's testimony contradicts his responses to Requests for Admission Nos. 3 and 5).

The exchange below synopsizes Magee's search efforts for responsive documents:

Q. Do you have any other documents that you have not shared with your counsel --

A. A bunch of them.

Q. -- that you haven't --

A. A bunch of them.

Q. -- shared with your counsel?

A. Yes.

Q. Oh, that's great –

A. Yes.

Q. So where is that stuff at?

A. I don't [know] where they at. I just tell you I got them.

Q. Do you know where they are?

A. No.

Q. You don't know where any of them are?

A. I know they in the attic. I'm getting – they're in my attic.

Q. They're in your attic?

A. In a box.

Q. In your attic, not –

A. In my attic.

Q. -- not in your Aunt Hylon's attic?

A. No. In my attic.

Q. Okay. Since – since you met me, have you looked in the box in your attic?

---

[15] *Id.* at pp. 40:22-46:1.

A. I have.

Q. Okay. Have you provided Mr. Leach with any of the documents in the –

A. I hadn't.

Q. Why not?

A. Cause I ain't got to that box they in yet. It's a big attic, there's a lot of paperwork I got up there.

Q. **Mr. Magee, don't you think it would be important to be cooperative with your attorneys when they ask you for things that the attorneys on the other side, meaning all the people in this room [*i.e.*, counsel for the D.A., Reed and Cox], have been asking for? Don't you think that by not doing that you're delaying the process and wasting time, money and resources of both the parties on the other side that you're suing, the attorneys who are representing the, and the court? …**

A. **Lookie here. I sat there and thought about that for four months I sat in jail, and hell, they wasn't in no hurry to see me sit there. You think I'm going to get in a hurry today for you, cowboy? No.**

Q. That's all I needed to hear. Thank you, Mr. Magee.

A. But I have looked, but I ain't come across them yet.[16]

Magee's testimony and his failure to further supplement his prior Responses and Supplemental Responses with documents located in his attic, his wife's "tote" and/or elsewhere known to his wife, supports a finding that Magee has delayed and is continuing to delay the discovery process in this matter to the prejudice of the D.A. among others.

## II. APPLICABLE STANDARD OF DISCOVERABILITY

Pursuant to Fed. R. Civ. P. 26, the D.A. is entitled to discovery regarding "any non-privileged matter that is relevant to any party's claim or defense...."[17] Further, relevant

---

[16] *Id*. at pp. 66:2-69:11. (Emphasis ours.)
[17] Fed. R. Civ. P. 26(b)(1).

information need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence.[18] Once a requesting party has shown relevance, the burden shifts to the producing party to show some privilege or other basis upon which to refuse discovery.[19] Here, the material requested is clearly relevant, and Magee has failed to meet his burden to show some privilege or other basis upon which to refuse discovery of the relevant information sought – and has even failed to conduct a diligent effort.

### III. PARTICULAR REQUESTS FOR PRODUCTION

The relevance of each of the request for production is discussed below.

#### A. Request For Production No. 15 (Text Messages with Debbie Cox)

The D.A.'s Request for Production No. 15 states: "please produce all communications between you and Debbie Cox during the relevant period and during the Incident."[20] In his written responses dated July 15, 2019 and August 5, 2019, Magee responded: "Plaintiff is attempting to determine if there are responsive documents in his possession. Responsive documents, if they are determined to exist within Plaintiff's possession, will be produced."[21]

During his deposition, however, Magee described text message communications between himself and defendant Jerry Wayne Cox's daughter, Debbie Cox, which his counsel agreed to produce if located.[22]

---

[18] *Id*.
[19] *See, e.g.*, *GP Industries, LLC v. Bachman*, 2007 WL 4245786 (D. Neb. 11/29/2007) ("When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant, or is 'of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure.'"); *see also*, *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11 Cir. 1985).
[20] **Exhibits 2 and 4**.
[21] *Id*.
[22] **Exhibit 6** – Excerpt from Magee's Depo Tr., Vol. II (10/03/2019) at pp. 91:4-93:9.

## B.    Request For Production Nos. 26 and 29 (Communications with AR-OCSE)

The D.A.'s Request for Production No. 26 and 29 respectively seek "copies of all correspondence between the Arkansas Office of Child Support Enforcement in Conway, Arkansas and representatives of the D.A. during the relevant period and Incident" and "all documents supporting your allegation in ¶ 15 of your Amended Complaint wherein you allege the Louisiana Department of Child & Family Services ("DCFS") Covington Division requested the Arkansas Office of Child Support Enforcement to close your case."[23]

In his written responses to Request No. 26 dated July 15, 2019 and August 5, 2019, Magee responded: "Plaintiff is attempting to determine if there are responsive documents in his possession.  Responsive documents, if they are determined to exist within Plaintiff's possession, will be produced."[24]  Magee's response to Request No. 29 is similar his response to Request No. 26, and includes an objection to the extent the material is equally available from the DCFS.[25]

It is the D.A.'s position that it is entitled to receive copies of all documents in Magee's possession which are responsive to its requests and reasonably calculated to lead to admissible evidence (*i.e.*, discoverable) and not subject to some applicable (and clearly stated) privilege.

In his deposition, Magee confirmed he and his wife have documents responsive to these requests, which provides as follows:

> Q. Your wife said that she had all the correspondence between you and the Arkansas – office of child support enforcement in Conway, Arkansas, and also representatives of the district attorney's office during that time.  Are those documents located in the box that you've been telling me about?
>
> A.    Yeah.

---

[23] **Exhibits 2 and 4**.
[24] *Id*.
[25] *Id*.

> Q. Or are those documents located somewhere else that your wife can put a finger on readily easily?
>
> A. No they ain't to be easily. Like I told you, we've looked, and I ain't trying to put it off. They're in an attic, and we've been through several boxes, but we ain't come to the right box yet.
>
> Q. And that would include copies of all payment that you've made in connection with child support, documents that you have, anyway, that relate to that, right, all in the same place, right?
>
> A. That is correct.
>
> Q. Same box. Can you think of another location where you have documents relating to this lawsuit or the child support proceedings other than that box in the attic? Is everything you have relating to that, it's all in that one box if it's not on your phone, right, or your wife's phone, right?
>
> A. That's right.[26]

The above makes clear that Magee and his wife possess documents responsive to Requests for Production Nos. 26 and 29 in a box in his attic and that Magee has not looked in every box in his attic. As such, the D.A. respectfully submits Magee should be ordered to look in every box in his attic and produce all responsive documents within five (5) days of such order.

### C. Request For Production No. 28 (Copies of Press Releases)

The D.A.'s Request for Production No. 28 seeks "copies of all press releases by the WPSO and/or the D.A. which you allege in ¶ 15 of your Amended Complaint were issued relating to the Incident."[27] In his written responses to Request No. 28 dated July 15, 2019 and August 5, 2019, Magee responded: "Plaintiff is attempting to determine if there are responsive documents in his possession. Responsive documents, if they are determined to exist within Plaintiff's possession, will be produced."[28] Magee's response also includes objections to the

---

[26] **Exhibit 6** – Excerpt from Magee's Depo Tr., Vol. II (10/03/2019) at pp. 97:3-98:5.
[27] **Exhibits 2 and 4**.
[28] *Id.*

extent that the material requested is equally available to the D.A.[29]  The D.A. nevertheless maintains the position that it is entitled to receive copies of all documents in Magee's possession which are responsive to its requests and reasonably calculated to lead to admissible evidence (*i.e.*, discoverable) and not subject to some applicable (and clearly stated) privilege.

In his deposition, Magee confirms he and his wife have documents responsive to these requests, which provides as follows:

> Q. All right.  Mr. Magee, in paragraph 15 of your complaint – amended complaint, you talk about press releases by the Washington Parish Sheriff's Office and the DA.  Do you have copies of those?
>
> A. What it was?
>
> Q. Paragraph 15, you said … blah-blah-blah-blah-blah.  Do you have copies of the press release issued by the Washington Parish District Attorney's Office that you're saying  Sheriff Seal in addition The Daily News? Is that all going to be located in that box?
>
> A. Uh-huh.
>
> Q. All right.  Yes or no?  That's a "yes"?
>
> A. I do.[30]

The above makes clear that Magee and his wife have responsive documents to Requests for Production No. 28 not yet produced.  As such, the D.A. respectfully submits Magee should be ordered to look in every box in his attic and produce all responsive documents not subject to a clearly stated and applicable privilege.

### D. Request For Production No. 30 (Magee Tax Returns for 2010-2014)

The D.A.'s Request for Production No. 30 requests "copies of all Federal Income Tax Returns, State Income Tax Returns, W-2 Forms, 1099 Forms, and all wage and lost wage

---

[29] *Id.*
[30] **Exhibit 6** – Excerpts from Magee's Depo Tr., Vol. II (10/03/2019) at pp. 98:16-99:15.

information or documentation which you have for the year of the Incident and for the four years preceding the Incident. ….”[31] In his written responses dated July 15, 2019 and August 5, 2019, Magee responded: "… Plaintiff is attempting to locate responsive documents, and, if so located, will supplement this response."[32]

During Magee's deposition, he testified that his wife Jennifer "handled them [taxes]" for tax years 2010-2014, and deferred to her regarding the location of copies of their tax returns.[33] In her deposition, Magee's wife clearly confirmed she handled the taxes for the family since they were married, and that she has copies of their tax filings from 2010-2014.[34] Magee's failure to produce copies of the requested tax returns evidences a continuing failure to comply with the discovery rules.

As such, the D.A. respectfully submits Magee should be compelled to produce copies of his family's tax returns for 2010-2014.

### E. Additional Document Requests Made During Magee's Deposition

During his deposition, Magee described a letter from prior counsel, Marion Farmer, which he claimed he had a photograph of on his phone, which he no longer had, and Magee claimed he forwarded a copy to his wife.[35] It must be noted that Magee's prior counsel Marion Farmer's deposition has been taken in this matter with no objection as to matters of the attorney work-produce privilege being asserted. Magee's counsel agreed to produce a copy of the photograph of the letter if it could be located, but no copy of said letter or the photograph of said

---

[31] **Exhibits 2 and 3**.
[32] *Id*. (Please note: Tax returns were requested to determine what, if any, treatment Magee claimed he was entitled to for paying child support during the given years, how much in child support he paid (if paid and claimed), and to determine when his disability benefits commenced which information he could not recall.)
[33] **Exhibit 6** – Excerpts from Magee's Depo Tr., Vol. II (10/03/2019) at pp. 99:17-102:2.
[34] **Exhibit 5** – Excerpts from Jennifer Magee's Depo Tr. (08/16/2019) at pp. 141:21-142:25.
[35] **Exhibit 6** – Excerpts from Magee's Depo Tr., Vol. II (10/03/2019) at pp. 85:18-86:25.

letter has been produced to date.[36] The D.A. respectfully submits Magee should be ordered to conduct a diligent search for said letter within five (5) days of such order and produce a copy.

During his deposition, the undersigned also requested from Magee's counsel a copy of the contents of the box Magee testified about, and the following exchange occurred:

> Q. I would like a copy of the contents of the box that's in the attic, obviously subject to anything that you –
>
> A. Subject to privilege review.
>
> Q. And I would – I would appreciate if we could get that within the next month. We've been dealing with this now for five months.
>
> A. As soon as it's found.
>
> Q. I understand that, but we're talking about now we know where the stuff is, he just has to go find it, right? We've been waiting on it for five months. I don't want to delay this anymore.
>
> A. Mr. Ducros, and I think he's testified, he's looked, he just hasn't finished completely – he can't find it at the moment. He hasn't been able to locate it.
>
> Q. Because he hasn't looked at everything yet.
>
> A. All right.[37]

The above makes abundantly clear that Magee and his wife possess responsive documents to the D.A.'s requests and Magee failed to conduct a thorough search for or produce them, which utter disregard for Federal discovery rules and principles has caused months of unnecessary delays, and wasted countless hours of time associated with the preparation for and taking of depositions for which such documents may have been useful.

As such, the D.A. respectfully submits Magee should be compelled to look in every box in his attic, produce all documents responsive to the D.A.'s discovery requests, including all

---

[36] *Id*.
[37] **Exhibit 6** – Excerpts from Magee's Depo Tr., Vol. II (10/03/2019) at pp. 106:1-107:10.

documents in the elusive box Magee alludes to under oath (with the exception of those subject to a clearly stated objection or privilege regarding which a privilege log should be provided), and that Magee do so in no less than five days from entry of an order compelling same.

## IV. CONCLUSION

The above considered, the D.A. respectfully prays for an order granting Defendant's Motion to Compel, ordering Magee to conduct a diligent search for and produce all documents responsive to the D.A.'s discovery requests within five (5) days from the entry of such order.

Respectfully submitted:

By:  s/ Alex L.M. Ducros_____
**ALEX L.M. DUCROS (Bar No. 32128)**
**Assistant District Attorney**
21454 Koop Drive, Suite 2G
Mandeville, Louisiana  70471
Phone:          (985) 898-3427
Facsimile:    (985) 867-5124

*Counsel for Defendant, Walter P. Reed,*
*In his former official capacity as*
*22nd Judicial District Attorney*

## CERTIFICATE OF SERVICE

I do hereby certify that on December 2, 2019, a copy of the foregoing Memorandum in Support of Defendant's Motion to Compel was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

By: s/ Alex L.M. Ducros, T.A.
**ALEX L.M. DUCROS (Bar No. 32128)**
**Assistant District Attorney**
21454 Koop Drive, Suite 2G
Mandeville, Louisiana 70471
Phone: (985) 898-3427
Facsimile: (985) 867-5124

*Counsel for Defendant, Walter P. Reed,*
*in his former official capacity as*
*22nd Judicial District Attorney*