UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROGER D. MAGEE** | * | CIVIL ACTION NO.: 14-01986 |
| | * | |
| **VERSUS** | * | JUDGE (SECTION "B") |
| | * | IVAN L.R. LEMELLE |
| **WALTER P. REED, ET AL** | * | |
| | * | MAGISTRATE (1): |
| | * | JANET VAN MEERVELD |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO DEPOSE WALTER REED IN HIS INDIVIDIUAL CAPACITY

MAY IT PLEASE THE COURT:

Defendant, Walter Reed in his Individual Capacity opposes the plaintiff's Motion for Leave to Depose Walter Reed who is in a Federal Correctional Institution in Morgantown, West Virginia.

### **Background**

Walter Reed was the District Attorney of St. Tammany and Washington Parishes until January 15, 2015. The instant lawsuit was brought in 2014, during media coverage of a federal investigation into Walter Reed's campaign funding, related IRS violations and other unrelated matters as to the St. Tammany Hospital Board of Directors.

The lawsuit sought to take advantage of the media coverage of the Reed's criminal investigation and proceedings, and suggested that because the plaintiff, Roger Magee <u>may</u> have talked to the FBI <u>in 2010</u> about Rev. Jerry Cox, (a supporter of Walter Reed), that somehow, as a reprisal, Cox and Walter Reed engineered a "DA Hold" to keep Roger Magee in jail after his arrest for failure to pay child support. In truth and fact, the reasons for Magee's inability to make bond was not a "DA hold", but a $30,000.00 plus Child Support Order for which Magee was in

1

arrears. It was Mr. Magee's ex-wife [1] who called the Sheriff's Office when Magee re-entered Louisiana, not any directive by Walter Reed. The resulting bond proceedings [2] are primarily governed by the Courts, not the D.A.'s office.

Reed had no discussions with anyone in the Sheriff's office regarding Magee's arrest/incarceration or a "D.A. Hold": **Depo Tr. Of Sheriff Randy "Country" Seal (12/6/16) at 41:2-6:** "(Q) At any time, have you ever spoken to Walter Reed about Roger Magee? (A) No. (Q) Never? (A) Never." **Also see Seals Tr. at 47:9-21:** "(Q) At any point in time while he was incarcerated, did you receive information that he was being held subject to a DA Hold?" – "No".

During the deposition of Roger Magee, he denied ever having any personal conversations with Walter Reed.[3] He attributed the source of his "free speech retaliation" allegation to comments by Rev. Jerry Cox. During Rev. Cox's deposition,[4] Cox denied ever asking to Walter Reed to take any action against Roger Magee. *Cox TR (10/22/19) at p 127*.

Finally, Magee in his deposition admitted that he had no knowledge of wrong doing by Walter Reed. "*Other than lawsuit referral." (But such referrals are legal)* Magee Tr. Vol. II (10/3/20) at p. 140:18-22 below:

(Q)…Okay. And just in summary, you didn't have any knowledge of any criminal activity – we'll talk to the lawsuits – about Walter Reed other than what you suggest about the law – lawsuit splits?  (A)…That is correct.  (Emphasis added)

---

[1] Crystal Taylor is the ex-wife, who overheard her children discussing that Magee was in town, called the Sheriff's office because she knew there was a pending arrest warrant and nearly $40K in child support arrearages that were due.  See Depo Tr. Crystal Taylor (8/26/19) at 37:4-38:21:
(A) After Hurricane Katrina, McGee moved to Arkansas, and he never paid child support... "I'd call the sheriff's department, he's here, he's in Louisiana."

[2] La. Code Crim. Proc. arts.333 and 338 (2014), as noted by Hon. Judge Ivan L.R. Lemele in Rec.Doc. 49, at p. 22 of 25… "the law is clear that the magistrates have the authority to fix bail, *see* La. Code Crim. Proc. Art.333", … this Court finds there to be no law or evidence of fact to suggest that Defendant Seal is even indirectly related to the denial of Plaintiff's bail.

[3] Magee Tr. Vol. II (10/3/19) at 130:8-133:8. "Never had a phone call with him" (p. 130), "never had a one-on-one meeting" (p. 131), etc.

[4] (Q)… In fact, correct me if I'm wrong, you hadn't spoken to Walter Reed about Roger Dale Magee's arrest in 2014 until after this lawsuit was filed; is that correct? (A).. Yeah.  We had no conversation about that. (A) Never heard of that…Cox Tr. At p. 19:12-20 of his depo.

In truth and fact, from Walter Reed's standpoint, (1) he has never talked with Mr. Magee, (2) he has never talked with Rev. Cox about Mr. Magee (3) he denies that there was any such thing as "DA Hold" and certainly "no hold"[5] was used as a retaliation against Mr. Magee for talking with the FBI and (4) he was never aware that Magee even talked to the FBI in 2010. (Query: So how could reprisal action have even occurred?)

### A. Walter Reed's Criminal Case is Totally Unrelated to Roger Magee

Undersigned counsel for Walter Reed also was his counsel for the criminal investigation and trial of Walter Reed. At no time did Mr. Magee's name, or any of FBI "302s" of Magee or other FBI statements by Magee surface during the criminal prosecution. Mr. Magee was never given immunity as a witness against Walter Reed by Federal authorities, nor was he ever on a Government Witness List. This is not a situation where Magee was a "cooperative witness" who could be the subject of some type of reprisal action.

In effect, the plaintiff in this case merely tries to weave a web of conspiracy based on media coverage of Walter Reed's criminal case, which has nothing to do with Roger Magee. There is no proof that Walter Reed ever knew anything about Roger Magee's alleged prior contact with the FBI, if it did even occur. Eighty thousand documents were marshalled by the U.S. Attorney's Office in the criminal prosecution of Walter Reed, and none of them deal with Roger Magee. Nor is there in existence a FBI 302 of Roger Magee's discussion which, according to Magee, occurred by phone five years earlier.

---

[5] Depo Tr. Of Chief Criminal Deputy Michael W. Haley, Sr. (12/5/16) at 41:15-42:5  (Q) At some point in time, did you ever hear of the term "DA Hold" with respect to Roger Magee? (A) I don't know what that is…

## II.  LAW AND ARGUMENT

### A.  Rule 6(b) Standard

Under Rule 6(b)(1), (2) and (3): if the deponent is confined, the Court need not grant leave to depose an incarcerated witness if: (1) the deposition would be unreasonably cumulative and duplicative to the parties seeking deposition; (2) the mover had ample opportunity to obtain the information and (3) the burden or expense of the deponent outweighs its likely benefit.

As to all three grounds, the Motion should be denied.

#### (1) Unreasonably Cumulative

There is no evidence thus far in the deposition process which show that Walter Reed, as the District Attorney, ever talked with Roger Magee, knew of Roger Magee's existence, or even was aware that Magee had talked with the FBI. Plaintiff attorney merely attempts to set up a deposition with the former District Attorney who is incarcerated to show he is incarcerated.

Since plaintiff lawsuit referrals are legal and that is the only information given to the FBI, relative to Walter Reed, there is no question Walter Reed's actions were legal.

#### (2) Ample Opportunity in the Past

McGee had ample opportunity before Walter Reed's incarceration which was May 23, 2019 to seek Reed's deposition. This case was filed in 2014. Reed was convicted in 2016 and was free on bond for three years until May 2019. The Discovery Cutoff in this case is on 1/3/20. Magee had a year to take Walter's deposition between August 2014 and August 2015, when all claims against Reed in both capacities were dismissed (Rec. Doc. 37). Magee had 5 months to take Walter's deposition between when certain claims were remanded via _Magee v. Reed_, 912 F.3d 920 (5th Cir.1/8/19) and Reed's incarceration on 5/23/19; Magee has propounded no written discovery to Walter Reed. Magee's motion is the last ditch effort to seek to expand or extend the

deadlines set forth in the Scheduling Order (Rec. Doc. 150) to the prejudice of the other parties who are trying to comply with the deadlines set therein, most notably the February 5 deadline by which all dispositive motions must be heard thereby requiring any such motions to be filed no later than 1/21/20.

### (3) Overly Burdensome

Undersign counsel has absolutely no control over what the Morgantown facility permits or what accommodations may be permitted or provided.

Even if such arrangements were to be ordered by the Court, the facility would have to be contacted in sufficient time to make arrangements for any type of accommodation, provided, the Bureau of Prisons even allows such an accommodation. Plaintiff counsel suggests alternative means for a deposition at a Bureau of Prisons facility which are not practicable. Such Bureau of Prisons facility is not designed to accommodate a civil video deposition process.

Finally, the burden and expense of the deposition outweighs the likely benefits primarily because in effect the plaintiff seeks to add the burden of expense of a deposition in a Bureau of Prisons institute (Morgan Town, West Virginia) over 9 hours of travel time away from this jurisdiction. To require all the various counsels in this case to attend a deposition in West Virginia would be overly burdensome under Section 3, and certainly is outweighed by the likely benefits.

Additionally undersigned has had difficulty communicating with his client and preparing him for any deposition.

### B. Walter Reed's Medical Issues Prevent a Deposition at This Time in West Virginia

Walter Reed's counsel also opposed the deposition based on medical issues Walter Reed faces. In effect, before his reporting date, he developed prostate cancer which had advanced to a

degree that the entire prostate had to be removed. The treating physicians indicated that, after its removal he should have radiation treatments starting in August and September 2019. Unfortunately, such radiation treatment was delayed and is supposed to commence in January 2020.

The medical records can be made available to the Court and to opposing counsel with a protective order to confirm his cancer condition. Undersigned counsel is seeking <u>additional</u> medical information from the Morgantown facility as to when the radiation treatment is to commence.  Because Reed's situation is not stabilized, radiation has not commenced.

There are additional complications in his medical condition as it relates to an automobile accident in February 2019, several weeks before his reporting date.  This injury likewise has caused discomfort and required medication.

### C. <u>Potential for Early Release to Home Incarceration</u>

Walter Reed's four year sentence has been reduced by certain programs to 27 months with a release date of October 2021. Additionally, the First Step Act can further reduce his sentence where he could be eligible for release.  Undersign Counsel will be filing for early release from confinement under the First Step Act, in that Reed is (1) over 60 years old; (2) suffers from severe medical issues; (3) will not be a risk of future criminal action and (4) can complete his sentence in-home incarceration.  Also Reed will be eligible for home confinement during his last six months where a deposition could occur.

## **CONCLUSION**

In the <u>absence</u> of any information, from any of the depositions or documents reflecting that (1) Walter Reed directly or indirectly threatened Roger Magee or in any way communicated with him; (2) Walter Reed directed anyone in his office to impose a "DA" hold on Magee, the Motion should be denied. The present record reflects no one ever received communication from Walter Reed directing them to "put a DA hold" on Roger Magee. The ordinary and normal bond process was the reason for his continued incarceration, not a District Attorney directive.

The deposition of Walter Reed is (1) unreasonable cumulative; (2) there was ample opportunity in the past to take the deposition; and (3)such a deposition while Reed is confined would be very burdensome.  Finally, Reed's medical condition does not allow for a deposition at this time.

The instant Motion should be denied.

                                                                Respectfully submitted,

                                                                **HAILEY, MCNAMARA, HALL,**
                                                                **LARMANN & PAPALE, LLP**

By:   /s/ Richard T. Simmons, Jr.
           **RICHARD T. SIMMONS, JR. (#12089)**
           1 Galleria Blvd., Suite 1400
           Metairie, Louisiana  70001
           Phone:      (504) 836-6500
           Facsimile:  (504) 836-6565
           *Counsel for Defendant, Walter P. Reed,*
           *In his individual official capacity*

## **CERTIFICATE OF SERVICE**

I do hereby certify that on December 23rd, 2019 a copy of the foregoing Defendant's Opposition to Plaintiff's Motion for Leave to Depose Walter Reed in his Individual Capacity was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

By:     /s/ Richard T. Simmons, Jr._____